UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SHARICE BROADWAY, | § | |
| *Plaintiff.* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO: 1:25-cv-711 |
| TELSA, INC., | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES SHARICE BROADWAY, Plaintiff, and files this Plaintiff's Original Complaint complaining of TESLA, INC., its predecessors, affiliates, subsidiaries and other related entities, under any name by which they are known and for her causes of action would show the Court as follows:

## I.
## PARTIES

1.    Plaintiff SHARICE BROADWAY (hereinafter "Broadway" or "Plaintiff") is a resident of Bell County, Texas, and a former employee of the Defendant.  At all times relevant to this cause of action, Plaintiff was an employee of Defendant.

2.    Defendant TESLA, INC., (hereinafter "Tesla" or "Defendant"), is a domestic corporation headquartered in and doing business in Austin, Travis County, Texas, within the Western District of Texas, Austin Division. Defendant can be served through private process upon a process server on its registered agent in Texas, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  A request for summons is made at this time.

1

**II.**
**JURISDICTION AND VENUE**

3.    This Court has jurisdiction over the subject matter and the parties to this case and all conditions precedent to the filing of this suit have been met or waived and venue properly lies in the Western District of Texas, Austin Division based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff sues Defendant for violations of Chapter 21 of the Texas Labor Code, the Americans with Disabilities Act, the Family Medical Leave Act, and the Worker Adjustment and Retraining Notification Act. All or a substantial part of the events giving rise to Plaintiff's claims occurred in the Western District of Texas, Austin Division.

**III.**
**BACKGROUND FACTS**

4.    At all times relevant to this case, Ms. Broadway was an employee of Defendant Tesla.

5.    On or around January 30, 2023, Tesla hired Ms. Sharice Broadway as a Production Associate building Model Y vehicles.

6.    Plaintiff was employed at the Gigafactory Texas facility on Tesla Road in Austin, Texas.

7.    During her employment, Ms. Broadway was an exemplary employee. She had no issues related to attendance or punctuality, had excellent performance, no prior discipline, and no negative feedback.

8.    Ms. Broadway had a pre-existing injury from her service in the military and resulting in disability from a tear in her Trapezius and/or Rhomboid.

9.    Ms. Broadway informed Tesla that the tear in her shoulder could be aggravated.

10.    The tear became aggravated at work, and Broadway showed Tesla imaging reflecting her

injuries.

11.    Ms. Broadway reported her injury to her direct Supervisor Joey Suarez.

12.    On or around September 2023, Ms. Broadway started rotating stations to alleviate some of the pain and aggravation of her disability.

13.    At Tesla's Austin facility, employees working on Model Y vehicles typically are on an assembly line process.

14.    The general assembly process involves multiple workstations where different tasks are performed sequentially to assemble the vehicle.

15.    Some employees are usually assigned to specific stations based on their roles and expertise.

16.    Other employees rotate stations on a regular basis.

17.    Rotating stations did not impact Broadway's performance or work.

18.    Numerous employees without disabilities rotated stations for Tesla.

19.    In March 2024, Supervisor Suarez said that Ms. Broadway had to submit work restrictions and accused her of being the only employee to rotate stations. He further accused her of refusing to work at the Flex Station. These accusations were untrue.

20.    Ms. Broadway informed Supervisor Suarez that she would need a functional task exam from occupational therapy, which required a consultation from the VA first, before she could get the restrictions. She notified Suarez of her attempts to schedule appointments with the VA.

21.    Supervisor Suarez responded by threatening to write up Ms. Broadway for refusing to

work.

22.    Broadway reported Suarez's threat to discipline her for her disability to human resources.

23.    Ms. Broadway never refused work.

24.    Suarez was ultimately investigated for his repeated behavior by Tesla with Broadway.

25.    On March 25, 2024, Ms. Broadway began her approved FMLA with May 1, 2024, as her approved return to work date for treatment for her serious health condition related to her tear in her Trapezius and/or Rhomboid.

26.    In addition to protected medical leave, Broadway sought short-term disability for her serious health condition related to her tear in her Trapezius and/or Rhomboid.

27.    Sedgwick approved Broadway's short-term disability and FMLA leave.

28.    Sedgwick is a third-party administrator that provides short-term disability and FMLA) administration services for various employers, including Tesla.

29.    While on approved FMLA, Ms. Broadway received a notification via email that she was part of a layoff.

30.    Ms. Broadway was given the run around and couldn't be given a reason why she was part of the layoffs.

31.    Eventually, Tesla informed Broadway that she was discharged because she had an attendance issue.

32.    However, Tesla works on a "point system" for attendance and memorializing which employees have attendance issues.

33.    To have an attendance issue, an employee must have 6 points. Ms. Broadway had only 4

4

points.

34. Tesla is supposed to employee ADA Accommodations Specialists who coordinate and support the accommodation process by assisting in developing and implementing programs to support employees with disabilities, including transitional work assignments and return-to-work programs after medical leave or injury.

35. Instead, no one attempted to accommodate Ms. Broadway's disability.

36. Tesla was never able to give a legitimate, non-discriminatory or non-retaliatory reason for laying off Ms. Broadway.

37. Subsequently to indicating she was being treated differently for her disability related FMLA leave after reporting being hurt at work, Plaintiff was told to gather her belongings and was walked off the premises.

38. At the time of her termination, Ms. Broadway was employed as a Production Associate making $24.00 an hour.

39. Ms. Broadway was working approximately 50 hours a week, making $42,000 annually with a $5,000.00 Stock Plan, and with eligibility for annual raises.

40. The numbers above do not reflect her future lost wages that she will, in all likelihood continue to suffer at a rate of $3,916.67 per month.

41. Ms. Broadway is entitled to losses related to her health care benefits, free counseling/therapy resources, and employer matched Roth IRA and/or 401k.

42. Under the applicable statutes, Sharice Broadway is also entitled to compensatory

damages, which we estimate to be at least $7,200.00 to date, based on the hardship the job loss caused to her, and the mental anguish and stress caused by the company's actions the wrongful termination.

43.    Plaintiff further alleges that she was not provided a proper WARN ACT notice.

44.    Plaintiff was notified she would be terminated the week of April 15, 2024, indicating that her last working day would be April 14, 2024, the prior day.

45.    Plaintiff was notified by Tesla in writing in May, 2024 that she would be separated June 14, 2024 with an offer of severance for the same.

46.    Tesla did not provide 60 days of advance written notice as required under the WARN ACT.

47.    Additionally, Plaintiff was terminated in the middle of her pre-approved leave and prior to notice being sent.

48.    Tesla informed Sedgwick to cancel Broadway's FMLA and short-term disability on April 19, 2024, alleging it was "not approved."

49.    Telsa told Broadway her position was "eliminated."

50.    However, numerous persons, including Broadway's partner, were offered jobs to perform the tasks of a production associate as Plaintiff was being discharged.

51.    Upon information and believe, other employees on medical leave were terminated during this time.

**IV.**
**CAUSES OF ACTION**

CAUSE OF ACTION – DISABILITY DISCRIMINATION, FAILURE TO ENGAGE
IN THE INTERACTIVE PROCESS, and FAILURE TO ACCOMMODATE IN
VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND CHAPTER
21 OF THE TEXAS LABOR CODE

52.    The Americans with Disabilities Act, as Amended in 2008 ("ADA") and Chapter 21 of

the Texas Labor Code apply to all employees who are qualified individuals with a

disability, have a history or record of a disability, and/or are "regarded as" disabled.

53.    Under the ADA, a disability means, with respect to an individual:

> (A) a physical or mental impairment that substantially limits one or more major life
>
> activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment. 42 U.S.C.S. § 12102(1).

54.    A Major life activity is defined to include, but is not limited to, caring for oneself, performing

manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking,

breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C.S.

§ 12102(2).

55.    A major life activity also includes the operation of a major bodily function, including but not

limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder,

neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. 42 U.S.C.S. §

12102(1).

56.    The definition of disability in this Act shall be construed in favor of broad coverage of individuals

under this Act, to the maximum extent permitted by the terms of this Act. 42 U.S.C.S. §

12102(4)(A).

57.    An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability. U.S.C.S. § 12102(4)(C).

58.    An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. U.S.C.S. § 12102(4)(D).

59.    The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as—

> (I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

> (II) use of assistive technology;

> (III) reasonable accommodations or auxiliary aids or services; or

> (IV) learned behavioral or adaptive neurological modifications. U.S.C.S. § 12102(4)(E).

60.    The Texas Commission on Human Rights Act (TCHRA) prohibits employers from discriminating against qualified individuals because of their disability. Tex. Lab. Code § 21.051, Tex. Lab. Code § 21.105.

61.    Because the TCHRA parallels the language of the Americans with Disabilities Act, Texas courts follow ADA law in evaluating TCHRA discrimination claims. *Diaz v. Maximus Servs., L.L.C.*, No. 23-50914, 2025 U.S. App. LEXIS 4364, *1 (5th Cir. Feb. 25, 2025).

62.    The TCHRA defines "disability" as "a mental or physical impairment that substantially limits at

least one major life activity." Tex. Lab. Code § 21.002(6); § 21.002(11-a).

63.    Ms. Broadway is disabled under this criteria.  Ms. Broadway had a Trapezius and/or Rhomboid tear requiring medical intervention that substantially limits one or more major life activity and that was neither transitory nor minor and includes lifting and bending.

64.    Broadway also had a record of this disability.

65.    Broadway's Trapezius and/or Rhomboid related disability continues to this day.

66.    Broadway continues to experience pain in her Trapezius and/or Rhomboid.

67.    Her major life activities impacted include bending, lifting and sleeping.

68.    Ms. Broadway is a qualified individual with a disability related to her Trapezius and/or Rhomboid.

69.    Ms. Broadway was able to perform the essential job functions of her job with or without a reasonable accommodation.

70.    Ms. Broadway is qualified for her job.  She satisfies the prerequisites for her job, to include possessing skill, experience, educational background, licenses and ability, as is demonstrated by two years of stellar performance.

71.    Ms. Broadway was written up and terminated for being disabled and while on disability related medical leave.

72.    A causal connection exists between her protected class status and the adverse employment actions she suffered in addition to the impact of the terms, privileges, and conditions of her employment.

73.    Similarly situated employees outside of her protected class were treated more favorably than

Plaintiff.

74.  Additionally, as a result of her disability, Ms. Broadway requested reasonable accommodation from her employer in the form of a rotating stations at work.    She also requested medical leave for treatment

75.  The requested accommodation was reasonable and enabled her to complete her essential job functions.

76.  The requested accommodation did not impose undue hardship on the Defendant.

77.  In response to her requested accommodation related to her need for additional medical leave, she was terminated while on leave.

78.  Other non-disabled employees were allow to rotate stations.

79.  Additionally, Defendant placed Plaintiff on a performance improvement plan and/or coaching plan shortly after she requested accommodation.

80.  Defendant failed to engage in good faith in the interactive process nor did they accommodate Plaintiff, instead terminating her shortly after requesting the accommodations.

81.  As a result of the discrimination, failure to accommodate, and failure to engage in the interactive process, Plaintiff suffered damages as the direct and proximate cause of her termination and the actions of Defendant.

82.  Plaintiff requests all relief available under Chapter 21 of the Texas Labor Code and the Americans with Disabilities Act.

83.  Plaintiff contends that Defendant cannot show a legitimate non-discriminatory reason for the

decision to terminate Plaintiff, and that any attempt to so allege is pretextual.

## CAUSE OF ACTION – VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT, INCLUDING DISCRIMINATION, INTERFERENCE and RETALIATION

84.     Under the Family Medical Leave Act ("FMLA") it is unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA.

85.     Under the Family Medical Leave Act ("FMLA") it is further unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the Family and Medical Leave Act (FMLA). 29 U.S.C.S. § 2615(a)(1).

86.     To state a prima facie FMLA interference claim, a plaintiff must allege that (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the benefits to which she was entitled under the FMLA.

87.     To state a prima facie claim for discrimination or retaliation under the Family and Medical Leave Act (FMLA), the plaintiff must allege that (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave.

88.     Prohibited conduct also includes retaliatory actions against the employee for taking, requesting, or returning to work from FMLA leave.

89.     An employee has the right to be reinstated to his previous position or an equivalent position upon her return from Family and Medical Leave Act (FMLA) leave. 29 U.S.C.S. § 2614(a)(1)(A)-(B).

90.    Plaintiff was a qualified employee under the FMLA, working at least 1,250 hours within the required previous twelve-month period for the year for coverage under the FMLA.

91.    Defendant was a qualified employer under the FMLA and employed more than 50 employees within 75 miles.

92.    Plaintiff requested FMLA medical leave for a serious health condition for herself that required surgical intervention.

93.    Plaintiff's disability related serious health condition was an illness, injury, impairment, and/or physical or mental condition that involved (a) inpatient/overnight care in a hospital or residential medical care facility and/or (b) continuing treatment by a health care provider.

94.    Additionally, Plaintiff further contends that her disability related serious health condition created a period of incapacity involving an inability to work or perform other regular daily activities for more than 3 days and required the requisite follow ups under the FMLA statute.

95.    Defendant approved Plaintiffs FMLA leave for her serious health condition.

96.    Defendant was required to designate Plaintiff's leave as a qualifying event or a non-qualifying event for FMLA.

97.    Plaintiff was eligible for at least 12 weeks of medical leave under the FMLA.

98.    Plaintiff alleges that Defendant discriminated against and retaliated against Plaintiff's right to exercise her FMLA rights, and that the violations prejudiced client.

99.    Plaintiff further alleges that Defendant interfered with, restrained, or denied exercise or attempts to exercise her FMLA rights, and that the violations prejudiced client.

100.   Plaintiff was disciplined and terminated for taking FMLA leave while actually on FMLA leave.

101.   None of the discipline provided to Plaintiff was for a failure to adhere to usual and customary notice and procedural requirements.

102.   All of Plaintiff's leave paperwork and certifications were submitted timely and pursuant to the requirements of Defendant.

103.   Plaintiff further alleges she suffered retaliation in violation of the FMLA.  Plaintiff was qualified for and protected under the FMLA, suffered an adverse employment action in the form of termination, and was treated less favorably than employees who had not requested leave, and suffered the adverse employment action of termination because she sought FMLA leave.

104.   Plaintiff alleges a causal link between her request for FMLA leave for a disability related serious health condition and her termination.

105.   Plaintiff alleges that Defendant is unable to prove a legitimate non-discriminatory reason for interference with her leave, and that any such contention is pretextual.

106.   Plaintiff alleges that Defendant is unable to prove a legitimate non-discriminatory and/or non-retaliatory reason for her termination, and that any such contention is pretextual.

107.   Plaintiff was entitled to be restored to her position and/or one nearly identical after going on FMLA leave.

108.   Plaintiff alleges that Defendant demonstrated discriminatory intent by terminating her employment.

109.   Plaintiff alleges that Defendant's violations of the FMLA were willful in nature and that

Defendant cannot prove that their acts or omissions were done in good faith and/or that Defendant had reasonable grounds for believing that the acts or omissions were not in violation of the FMLA.

110.    As a result of the discrimination and retaliation in violation of the FMLA, Plaintiff suffered damages as the direct and proximate cause of her termination and the actions of Defendant.

111.    Plaintiff seeks all damages and relief available under the FMLA.

<u>CAUSE OF ACTION – VIOLATIONS OF THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT</u>

112.    This action is brought under the WARN Act, 29 U.S.C. §§ 2101-2109, which requires certain employers, including Tesla, to provide at least 60 days' notice to employees prior to a mass layoff or plant closure.

113.    Plaintiff Broadway was employed by Tesla at its Tesla, Inc., at 1 Tesla Road, Austin, Texas 78725 in Austin Texas, and was laid off on or about June 14, 2024 as part of a mass layoff or plant closure.

114.    Tesla failed to provide Plaintiff with the required 60 days' notice before the layoff or closure, as mandated by the WARN Act.

115.    Plaintiff was adversely affected by the lack of proper notice under the WARN Act.

116.    Tesla is an "employer" within the meaning of the WARN Act, as it employed over 100 full-time employees at the relevant time and is subject to the provisions of the Act.

117.    On or about June 14, 2024, Tesla implemented a mass layoff or plant closure at its facility in Austin, Texas, including Plaintiff, at that location.

118.    Tesla failed to provide Plaintiff with the 60 days' advance written notice required under the

WARN Act before the layoff occurred.

119.   Notice of the termination was not provided until April 21, 2024 to Plaintiff.

120.   As a result of the layoff, Plaintiff experienced an employment loss, defined under the WARN Act as a termination,  and was not given the requisite 60 days' notice.

121.   Under the WARN Act, Tesla was required to provide written notice of the layoff or plant closure to Plaintiff and other affected employees at least 60 days before the action took place. Tesla failed to provide this notice, which resulted in financial harm to Plaintiff and others similarly situated.

122.   As a result of Tesla's failure to comply with the WARN Act, Plaintiff has suffered economic losses, including the loss of wages, benefits, and other compensation that Plaintiff would have received during the 60-day notice period.

123.   Plaintiff is entitled to recover back pay for the 60-day notice period, benefits, and interest on these amounts, as well as other appropriate remedies as provided by the WARN Act

124.   Plaintiff seeks back pay, benefits, and other relief available under the WARN Act due to Tesla's failure to comply with the statutory notice requirements.

125.   Plaintiff is also entitled to recover attorneys' fees and costs of litigation under the WARN Act, as well as any other relief the Court deems just and proper.

## V.
## AGENCY AND *RESPONDEAT SUPERIOR*

126.   Whenever in this petition it is alleged that a Defendant did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by the Defendant and was done in the normal and routine course and scope of employment of

Defendant's officers, agents, servants, employees or representatives and that they are responsible through the legal theories of agency and *respondeat superior.*

## VI.
## <u>DAMAGES</u>

127.    As a proximate result of Defendant's actions, Plaintiff has suffered and will suffer past, present, and future lost earnings and wages, loss of earning capacity in the past and future, employee benefits in the past and future, and pecuniary losses, for which Plaintiff pleads to recover at trial. The lost earnings and benefits damages sought are within the jurisdictional limits of this court.

128.    Plaintiff seeks the back pay, benefits and interest for the failure to provide the 60 day notice under the WARN Act.

129.    As a consequence of Defendant's actions, Plaintiff has suffered and will suffer past, present, and future compensatory damages (including emotional pain and suffering, inconvenience, mental anguish, damage to reputation, loss of enjoyment of life, and other noneconomic losses), for which Plaintiff pleads to recover at trial. The damages and equitable relief for said compensatory damages sought are within the jurisdictional limits of this court. Plaintiff seeks an order from the Court requiring Defendant to place a copy of its judgment against Defendant in Defendant's HR or other similar file relating to the Plaintiff.

130.    As a consequence of the fact that Defendant acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights, Plaintiff is entitled to exemplary damages.

131.    Plaintiff further seeks attorneys fees pursuant to Chapter 21 of the Texas Labor Code, the

Americans with Disabilities Act, the WARN Act, and the Family Medical Leave Act.

132.    Plaintiff further seeks liquidated damages under the FMLA.

133.    Plaintiff seeks all remedies available and allowed under the Texas Labor Code in the past and future.

134.    Plaintiff seeks expert witness fees.

135.    Plaintiff seeks court costs and pre-judgment and post-judgment interest.

**VII.**
**DESIGNATED EMAIL FOR SERVICE**

136.    The following is the undersigned attorney's designation of electronic service email address for all electronically served documents and notices, filed and unfiled: (trey@harperlawtx.com  and  Taylor@harperlawtx.com and  veronica@harperlawtx.com ). This is the undersigned's ONLY electronic service email addresses and service through any other email addresses will be considered invalid.

**VIII.**
**ALTER EGO and MISNOMER**

137.    In the event any parties are misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.

**IX.**
**EXEMPLARY DAMAGES**

138.    Pursuant to Chapter 41 of the Texas Civil Practices and Remedies Code, Plaintiff seeks exemplary damages.  Plaintiff alleges that Defendant acted with actual malice and specific

17

intent to cause substantial injury without just cause or excuse and/or with reckless indifference based on the risk of danger to the Plaintiff, magnitude of harm to others, and the awareness subjectively by Defendant of the risk, for which Defendant proceeded forward with conscious indifference to the rights, safety, or welfare of Plaintiff and her state protected rights.

139.    Plaintiff alleges malice and willful conduct by Defendant resulting in substantial injury independent of other compensable harms.

## X.
## JURY DEMAND

140.    Ms. Broadway respectfully demands that this Court impanel a lawful jury to hear this case.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff SHARICE BROADWAY prays that upon final hearing, the Court enter judgment in favor of Plaintiff against Defendant in an amount in excess of the minimum jurisdictional limits of this Court, for economic damages, past and future loss of wages, earning capacity, and benefits, pecuniary losses, compensatory damages, back and front pay, liquidated damages, expert witness fees, attorneys fees, exemplary damages, costs of court, pre- and post-judgment interest at the highest rate allowed by law, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**HARPER LAW FIRM**
18618 Tuscany Stone, Suite 210
San Antonio, Texas 78258
(210) 780-3881; Telephone
(210) 876-1891; Facsimile
trey@harperlawtx.com; Electronic Mail

BY:     */s/ Thomas N. Cammack, III*
        THOMAS N. CAMMACK, III
        State Bar No. 24073762

ATTORNEY FOR PLAINTIFF